UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID LANNING, JR. ) | |
| ) | Case No.   1:16-cv-132 (MAD/DJS) |
| Plaintiff, ) | |
| ) | VERIFIED COMPLAINT |
| ) | JURY TRIAL DEMANDED |
| v. ) | |
| ) | |
| THE CITY OF GLENS FALLS, THE ) | |
| GLENS FALLS POLICE DEPARTMENT, ) | |
| THE COUNTY OF WARREN, THE ) | |
| WARREN COUNTY SHERIFF'S ) | |
| DEPARTMENT, THE WARREN COUNTY ) | |
| DISTRICT ATTORNEY'S OFFICE, ) | |
| RYAN ASHE in his official and individual ) | |
| capacities, and KEVIN CONINE, JR. in his ) | |
| official and individual capacities ) | |
| ) | |
| Defendants. ) | |

Plaintiff, David Lanning, for his complaint against the above-named Defendants, states as follows:

**NATURE OF ACTION AND JURISDICTION**

1. This is a civil action for money damages, declaratory, and injunctive relief pursuant to 42 U.S.C. §§ 1983 and 1988 against Defendants for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiff of rights secured under the Fourth and Fourteenth Amendments of the United States Constitution.

2. This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1331, 1343, 2201 and 2202, 42 U.S.C. 1983 and Rule 57 of the Federal Rules of Civil Procedure.

3. Plaintiff brings this action resulting from damages incurred due to the violation of his civil rights under 42 U.S.C. 1983 including: malicious prosecution in violation of the

1

Fourth Amendment and denial of his right to equal protection under the law in violation of the Fourteenth Amendment of the United States Constitution that he was subjected to by Defendants.

4. Venue is proper in the United States District Court for the Northern District of New York under 28 U.S.C. § 1391(b). The actions complained of took place in this judicial district.

## PARTIES

5. Plaintiff is an individual and resides in the County of Warren, State of New York, which is in this judicial district.

6. Defendant One, City of Glens Falls, is a municipality located within the County of Warren and a "person" subject to suit within the meaning of 42 U.S.C. § 1983.

7. Defendant Two, Glens Falls Police Department, is a public entity within the City of Glens Falls and a "person" subject to suit within the meaning of 42 U.S.C. § 1983.

8. Defendant Three, County of Warren, is a municipal entity within the State of New York and a "person" subject to suit within the meaning of 42 U.S.C. § 1983.

9. Defendant Four, Warren County Sheriff's Department, is a public entity within the County of Warren and a "person" subject to suit within the meaning of 42 U.S.C. 1983.

10. Defendant Five, Warren County District Attorney's Office, is a public entity with the County of Warren and a "person" subject to suit within the meaning of 42 U.S.C. 1983.

11. Defendant Six, Ryan Ashe, is a former police officer with the Glens Falls Police Department and a "person" subject to suit in his official and individual capacity within the meaning of 42 U.S.C. § 1983.

12. Defendant Seven, Kevin Conine, Jr., upon information and belief,  is an investigator with the Warren County Sheriff's Department and a "person" subject to suit in his individual capacity within the meaning of 42 U.S.C. § 1983.

## FACTS

13. In 2012, Mr. Lanning was in the middle of a bitter divorce and custody battle with his estranged wife, Jamie Lanning, from whom he separated in 2010.

14. Both before and after the separation, Jamie Lanning regularly made false claims to the police and courts against Mr. Lanning in her efforts to harm him. She would later recant her claims.

15. Jamie Lanning did so using her romantic relationship with a police officer whom she was dating at the time of the separation, but who later ended the relationship.

16. In February of 2012, Jamie Lanning began dating another police officer, Ryan Ashe of the Glens Falls Police Department.

17. Jamie Lanning did begin to use her romantic relationship with Ashe as a weapon in the divorce and custody dispute with Mr. Lanning.

18. At this time, Ashe's former partner and close personal friend, Kevin Conine, Jr., worked for the Warren County Sheriff's Department.

19. Jamie Lanning used Conine's close friendship with Ashe and position with the Warren County Sheriff's Department as well to serve her purposes in the dispute with Mr. Lanning.

20. On May 24, 2012, Jamie Lanning made a false report to Conine at the Warren County Sheriff's Department that Mr. Lanning had threatened over the phone to kill her.

21. According to Jamie Lanning's report, Mr. Lanning made the threat shortly after seven o'clock in the evening on May 23, 2012.

22. However, Jamie Lanning waited for Ashe to get off duty from work that night to have him take her to make the in-person report to Conine.

23. Conine took Jamie Lanning's report a little after midnight on May 24, 2012.

24. At approximately three o'clock in the morning on May 24, 2012, based upon Jamie Lanning's report, and no further investigation of the facts, Conine arrived with his partner at Mr. Lanning's home to arrest him.

25. Conine and his partner pounded on Mr. Lanning's front door, waking him and his sixty-eight year-old mother, who was visiting him at the time.

26. Mr. Lanning opened the door to the officers. He was not sure why the officers were at his house so he asked the officers what was going on and whether his daughter was okay.

27. The officers would not tell him anything.

28. Conine and his partner asked if he was David Lanning and he told them that he was.

29. The officers then told him that he needed to go with them right away.

30. Mr. Lanning tried to close the door but Conine put his hand on the door and prevented it from closing.

31. Mr. Lanning's mother, who was witnessing the whole exchange and becoming very upset, asked what was going on.

32. Conine responded that Mr. Lanning was going with them and that he was under arrest for threatening to kill his wife while on a phone call with her.

33. The officers did not have an arrest warrant.

4

34. Mr. Lanning explained to the officers that he did not contact Jamie Lanning that night and in fact had not spoken with her personally in over a year. Mr. Lanning requested that the officers look further into Jamie Lanning's claim.

35. Conine ignored Mr. Lanning, repeated that he was going to go with them right now and grabbed Mr. Lanning by the hand.

36. At this time, Mr. Lanning, who was dressed only in a tee shirt, boxer shorts and socks said that he needed to go put some clothes on.

37. Conine told him that he wasn't going anywhere.

38. Mr. Lanning's mother asked the officers to let Mr. Lanning to put some clothes on.

39. Conine's partner told her to "shut the fuck up and sit down."

40. The officers tightly handcuffed Mr. Lanning behind his back and walked him to the patrol car, still in his state of undress.

41. During this time, the officers told Mr. Lanning several times to "shut the fuck up."

42. Conine transported Mr. Lanning to the Warren County jail.

43. There he was handcuffed to a wall until he was processed, after which he was handcuffed again and placed in an individual jail cell for approximately five hours.

44. At approximately nine o'clock on the morning of May 24, 2012, Mr. Lanning was taken to Queensbury Town Court where he was arraigned and his bail was set.

45. Mr. Lanning was charged with Criminal Contempt in the First Degree for the violation of a pre-existing order of protection in Jamie Lanning's favor and Aggravated Harassment in the Second Degree.

46. Mr. Lanning spent approximately forty minutes at Queensbury Town Court in open view to the public still dressed in nothing but his tee shirt, boxer shorts and socks.

5

47. After his bail was posted, the handcuffs were removed and Mr. Lanning was released to go home.

48. As a result of the tight handcuffs, which he spent several hours in, Mr. Lanning suffered bruising on his wrists that lasted over a week.

49. As a result of the arrest and the charges against him, a "no contact" order of protection was granted to Jamie Lanning against Mr. Lanning.

50. Following the arrest, Mr. Lanning feared that his arrest and his circumstances with the police would cause him to lose some or all of his custody of his daughter. This ultimately did come to fruition and to this day Mr. Lanning has yet to recover the same custody of his daughter that he had before his arrest.

51. On or about August 9, 2012, an incident occurred between Jamie Lanning and several members of her family at her mother's house.

52. Jamie Lanning and her family members got into a heated argument about her poor parenting.

53. Mr. Lanning and Jamie Lanning's six year-old daughter and another minor child were present to witness the fight.

54. Jamie Lanning called Ryan Ashe on his personal cell phone number to come arrest people for aggravated harassment because she did not like what they were saying to her.

55. Ashe arrived on the scene in his squad car and in uniform, although dispatch had never been called, leading those present to believe he was on duty.

56. Jamie Lanning told Ashe that he should arrest her brother and Mr. Lanning, although Mr. Lanning was not present at the time and had not spoken to Jamie Lanning in several months.

57. Jamie Lanning ended up leaving with Ashe and the two minor children.

58. Mr. Lanning learned of the incident from some of the family members that were present to witness it.

59. Concerned about the effects of such incidents on the safety and well-being of his daughter, Mr. Lanning wrote a letter to the chief of the Glens Falls Police Department, William Valenza, describing what had occurred and inquiring as to whether it was standard practice for girlfriends of police officers to summon them on their personal phone numbers to come to their aid.

60. In his letter, Mr. Lanning also advised Chief Valenza of Jamie Lanning's history of making false claims and reports against him and his resulting concern that she might send Ashe after him on a whim by simply making a private phone call to him.

61. Chief Valenza responded to Mr. Lanning's letter stating that he would investigate the situation and interview all witnesses. He further assured Mr. Lanning that Ashe was a good police officer and that in the meantime he would advise Ashe not to have contact with any of the witnesses.

62. Notably, Ashe lived with three of the witnesses to the incident.

63. Two days following his initial response, Chief Valenza followed up with Mr. Lanning and told him that the incident had been investigated, no violations were found, and the matter was closed.

64. On September 18, 2012, Mr. Lanning went to his daughter's grandmother's house for a pre-arranged third party custodial pick up.

65. Pursuant to the existing custody arrangement, Jamie Lanning was not supposed to be there.

7

66. The purpose of the third party pick up was to prevent Jamie Lanning and Mr. Lanning from needing to interact.

67. Jamie Lanning and Ryan Ashe, who was off duty at the time, arrived in Ashe's personal vehicle at the custody exchange. Ashe was driving.

68. Without speaking to or interacting with Jamie Lanning, Mr. Lanning picked up his daughter and went to dinner with her for two hours. He then brought his daughter back to her grandmother's house for the drop off as ordered.

69. Upon arriving, Mr. Lanning noticed an unmarked police cruiser waiting on Monument Avenue.

70. He also noticed that Jamie Lanning and Ryan Ashe were sitting in Ashe's personal vehicle parked across the street from the point of drop off. Ashe was dressed in plain clothes and was in the driver's seat.

71. Mr. Lanning parked his car and told his six year-old daughter that something was about to happen but not to worry because he was going to be alright. He then said goodbye and let his daughter out of the car for the drop off.

72. Very shortly thereafter, five Glens Falls police officers converged upon Mr. Lanning.

73. The officers forcibly removed him from his car, forcibly pushed him up against his vehicle, placed him in double handcuffs, screamed at him, and manhandled him.

74. Mr. Lanning was placed under arrest for the alleged violation of the order of protection that resulted from the May 24, 2012 charges brought against him in Queensbury Town Court.

75. While Mr. Lanning was at dinner with his daughter, Jamie Lanning and Ryan Ashe had given false statements to the Glens Falls Police Department that at the time of picking up his daughter, Mr. Lanning had stared at them making them feel unsafe.

76. By the time of the arrest on September 18, 2012, Mr. Lanning had already informed the Glens Falls Police Department and its employees, as well as the city attorney, Ron Newell, about Officer Ashe's improper and unlawful harassment, surveillance, and targeting of him based on Ashe's romantic relationship with Jamie Lanning.

77. Mr. Lanning had also informed the Glens Falls Police Department, its employees and Mr. Newell of Jamie Lanning's history of using her connections with police officers to harass and prosecute Mr. Lanning and had requested that actions be taken to prevent this from continuing.

78. No such preventative actions were taken.

79. During the arrest, one of the arresting officers, Michelle Arnold, told Mr. Lanning "We're all aware of your letters to the chief. Maybe this will slow you down."

80. His car was confiscated and placed at an impound lot for his alleged lack of registration, lack of insurance, and lack of a license.

81. Mr. Lanning did, in fact, have the vehicle registered and insured and did possess a valid license at that time. All tickets were later dismissed.

82. Mr. Lanning was brought to the Glens Falls Police Department where he was subject to a breathalyzer test and a strip search.

83. Around eleven o'clock that night Mr. Lanning was arraigned and bail was set at ten thousand dollars.

84. Mr. Lanning was charged with Criminal Contempt in the First Degree.

85. Mr. Lanning was not given an opportunity to post bail.

86. Mr. Lanning was imprisoned in the Warren County Jail, where his civilian clothes were taken from him. He was subject to a strip search, a cavity search, a blood test and a DNA test. He was then given a prison uniform to wear.

87. Mr. Lanning was held at the Warren Count Jail for three days.

88. The May 24, 2012 charges in Queensbury Town Court were merged with the September 18, 2012 Glens Falls City Court charges and Mr. Lanning was indicted on September 21, 2012 in the Warren County Court with three counts of Criminal Contempt in the First Degree and one count of Aggravated Harassment in the Second Degree.

89. Based upon information and belief, to secure the indictment, the district attorney's office relied solely upon the testimony of Jamie Lanning.

90. As a result of his indictment, Mr. Lanning had to post bail in the amount of $10,000.00 for his release.

91. He was also placed on pre-trial probation, forced to obtain a substance abuse evaluation and begin recommended treatment (although he did not have a substance abuse problem), and forced to submit to random drug and alcohol tests, all at his own expense.

92. Another full order of protection was granted in favor of Jamie Lanning.

93. In addition, while Mr. Lanning was in the Warren County Jail, he was fired from his job for a no call, no show.

94. During this ordeal, Mr. Lanning in fact lost two jobs as a result of his inability to be at work when scheduled and as a result of the community's learning of the situation and certain individuals not wanting to be associated with him.

95. As a result of the continued issuance of orders of protection against him, Mr. Lanning progressively lost more and more custody of his daughter.

96. During the prosecution of the felony charges, the Warren County District Attorney, Kathleen Hogan, came into possession of evidence that indicated that Jamie Lanning had lied in her reports to the police on the two nights in question.

97. As such, the Warren County District Attorney's Office was aware that the charges against Mr. Lanning were entirely baseless.

98. Rather than dismiss the charges, on March 6, 2013, the District Attorney's Office instead moved to reduce the felony charges and transfer the charges back down to the Queensbury Town Court and the Glens Falls City Court where they had originated to be prosecuted separately as misdemeanors.

99. The Assistant District Attorneys in the lower courts were also aware that the evidence indicated that the charges were baseless, yet they continued to prosecute them.

100. On April 9, 2013, Mr. Lanning was arraigned in Glens Falls City Court upon a Special Prosecutor's Information on two counts of Criminal Contempt in the Second Degree, Class A Misdemeanors.

101. While Mr. Lanning continuously requested a trial in the Glens Falls City Court, no trial was ever held.

102. Instead, the judge dismissed the charges on November 7, 2014 after having noted that the District Attorney's Office did not have enough evidence to prosecute their case despite continuously claiming they were ready to stand trial.

103.    Upon a Special Prosecutor's Information dated May 24, 2013, Mr. Lanning was also arraigned in Queensbury Town Court on one count of Criminal Contempt in the Second Degree and one count of Aggravated Harassment in the Second Degree.

104.    A jury trial was held in Queensbury Town Court and on May 7, 2014 the charges against Mr. Lanning were dismissed.

105.    Throughout the year of 2012, and continuing into 2013 and 2014, Ryan Ashe, while on duty and off duty, harassed, surveilled, targeted and prosecuted Mr. Lanning based on his romantic relationship with Jamie Lanning and her divorce from Mr. Lanning.

106.    On May 1, 2013, in furtherance of the harassment, surveillance, targeting and false prosecution of Mr. Lanning, Ashe followed Mr. Lanning in his vehicle while he was driving in the City of Glens Falls and stopped and detained him.

107.    Ashe falsely claimed that Mr. Lanning had "hit the white line" while driving. Ashe issued Mr. Lanning with traffic tickets for aggravated unlicensed operation of a motor vehicle, moving from the lane unsafely, and failure to notify the DMV of a change of address.

108.    All three tickets were dismissed on June 13, 2013.

109.    Mr. Lanning made the Glens Falls Police Department and its employees aware of the harassment, surveillance, targeting and false prosecution by Ashe as a result of his romantic relationship with Jamie Lanning and requested assistance in making it stop.

110.    The Glens Falls Police Department and its employees were aware that officer Ashe had a history of abusing his power as a uniformed police officer.

111.    Officer Ashe already had three disciplinary write ups in the short time of his employment with the Glens Falls Police Department prior to either of Mr. Lanning's above-outlined arrests.

112.    Despite Ashe's known disciplinary record and Mr. Lanning's expressing his concerns, the Glens Falls Police Department took no action to prevent Ashe's further wrongdoing.

113.    Not only did the Glens Falls Police Department fail to take actions to prevent Ashe's continued unlawful behavior against Mr. Lanning, employees of the Glens Falls Police Department knowingly and intentionally took actions to further Ashe's and Jamie Lanning's purposes against Mr. Lanning, as evidenced by their actions and statements before, on and after the September 18, 2012 arrest.

114.    As a result of the egregious unlawful actions taken against him by Ryan Ashe, Kevin Conine, the Glens Falls Police Department, the Warren County Sheriff's Department and the Warren County District Attorney's Office, all in the furtherance of Ashe's and Jamie Lanning's efforts to cause serious harm to Mr. Lanning in his divorce and child custody dispute with her, Mr. Lanning's life was destroyed.

115.    Mr. Lanning has spent years going through the criminal justice system, including suffering two false arrests, being falsely incarcerated, being arraigned in public wearing nothing but his underwear, being repeatedly strip searched and cavity searched, being subjected to probation and alcohol and substance monitoring, having to attend countless court appearances, and being subject to numerous orders of protection, all in the furtherance of false charges that at all times were clearly baseless.

116.    Mr. Lanning was forced to pay for his own testing and monitoring while subject to probation.

117.    Mr. Lanning has paid at least $50,000.00 in attorney's fees in fighting these false charges and defending their damaging effect on his divorce and custody proceedings.

118.    As a result of his deteriorated reputation in the community from his criminal proceedings and his inability to attend work while falsely incarcerated, Mr. Lanning has lost two jobs, each of which paid him approximately $1,000.00 per week.

119.    Finally, Mr. Lanning has lost significant custody of his young daughter as a result of the false and malicious prosecution of the above criminal charges and the resulting orders of protection granted against him.

120.    While Mr. Lanning has regained some of his custody rights, he still has significantly less custody of his daughter than he did prior to the incidents herein and he has lost a significant amount of time and experiences with his daughter, with whom he is very close. This time is priceless and can never be returned to Mr. Lanning or his daughter.

## CAUSES OF ACTION

### COUNT ONE
### Violation of Constitutional and Civil Rights Pursuant to 42 U.S.C. §§ 1983 and 1988
### Violation of Fourth Amendment – Malicious Prosecution
### (Against Defendants Three, Four, Six and Seven)

121.    The foregoing allegations are incorporated as if re-alleged herein.

122.    Kevin Conine and the Warren County Sheriff's Office, with the assistance of Ryan Ashe, and upon the report of Jamie Lanning, commenced a criminal proceeding against Mr. Lanning when they charged him with Criminal Contempt in the First Degree

and Aggravated Harassment in the Second Degree on May 24, 2012 and assisted in the continuance of the criminal prosecution thereafter.

123.    Conine knew or had reason to believe based on his personal relationship with Ashe and Jamie Lanning, at the time the complaint was made by Jamie Lanning that the statement was not true.

124.    Conine failed to conduct any investigation into Jamie Lanning's report in order to verify the veracity of her claims.

125.    Conine lacked probable cause for charging Mr. Lanning with the above crimes.

126.    Conine did not seek or receive a warrant for Mr. Lanning's arrest.

127.    Conine conducted the arrest of Mr. Lanning and charged him with the above crimes in furtherance of his own personal objective of supporting his close friend, Ryan Ashe and Ashe's girlfriend, who were known by Conine to be feuding with Mr. Lanning.

128.    Conine's actions against Mr. Lanning were undertaken with actual malice.

129.    The proceedings for the above charges were dismissed following a jury trial.

130.    The above actions by Conine constitute malicious prosecution.

131.    Conine was acting under the color of state law in that he utilized the authority vested in him by the Warren County Sheriff's Department, as demonstrated through his uniform, weapon, and squad car issued by the Warren County Sheriff's Department, to carry out the acts which constituted malicious prosecution. Further, Conine was on duty as officer at the time of the incident.

132.    The malicious prosecution against the Mr. Lanning was conducted pursuant to a custom practiced by members of the Warren County Sheriff's Department.

133.    As a result of the malicious prosecution against the plaintiff, the plaintiff has been damaged by the defendants in an amount to be determined at trial.

## COUNT TWO
## Violation of Constitutional and Civil Rights Pursuant to 42 U.S.C. §§ 1983 and 1988
### Violation of Fourth Amendment – Malicious Prosecution
### (Against Defendants One, Two, and Six)

134.    The foregoing allegations are incorporated as if re-alleged herein.

135.    The Glens Falls Police Department, upon the reports of Ryan Ashe and Jamie Lanning, commenced a criminal proceeding against Mr. Lanning when they charged him with Criminal Contempt in the First Degree on September 18, 2012 and assisted in the continuance of the criminal prosecution thereafter.

136.    The Glens Falls Police Department knew or had reason to believe based on Ashe's disciplinary record and Mr. Lanning's previously asking for assistance against Jamie Lanning's false prosecution of him, at the time the complaints were made that the statements were not true.

137.    The Glens Falls Police Department failed to conduct any investigation into Ryan Ashe's and Jamie Lanning's reports in order to verify the veracity of their claims.

138.    Further, the Glens Falls Police Department failed to ascertain and take into account that Jamie Lanning was in fact the individual liable for wrongdoing on the night in question as she was present for the custodial pick up against a court order.

139.    The Glens Falls Police Department lacked probable cause for charging Mr. Lanning with the above crimes.

140.    The Glens Falls Police Department did not seek or receive a warrant for Mr. Lanning's arrest.

16

141. The Glens Falls Police Department conducted the arrest and confiscation of Mr. Lanning's car and charged him with the above crimes in furtherance of its personal objective of supporting its own officer, Ryan Ashe and Ashe's girlfriend, who were known by the Glens Falls Police Department to be feuding with Mr. Lanning.

142. Further, the Glens Falls Police Department conducted the arrest and confiscation of Mr. Lanning's car in furtherance of its objective of punishing Mr. Lanning for his perceived interference with the policies of the police department and hindering his ability to create any further interferences in the future.

143. The Glens Falls Police Department's and Ryan Ashe's actions against Mr. Lanning were undertaken with actual malice.

144. The proceedings for the above charges were dismissed.

145. The above actions by the Glens Falls Police Department and Ryan Ashe constitute malicious prosecution.

146. The Glens Falls Police Department was acting under the color of state law in that it utilized its authority as demonstrated through the uniforms, weapons, and squad cars employed by its on-duty officers to carry out the acts which constituted malicious prosecution.

147. The malicious prosecution against the Mr. Lanning was conducted pursuant to a custom practiced by members of the Glens Falls Police Department.

148. As a result of the malicious prosecution against the plaintiff, the plaintiff has been damaged by the defendants in an amount to be determined at trial.

**COUNT THREE**
**Violation of Constitutional and Civil Rights Pursuant to 42 U.S.C. §§ 1983 and 1988**
**Violation of Fourth Amendment – Malicious Prosecution**
**(Against Defendants One, Two, and Six)**

17

149. The foregoing allegations are incorporated as if re-alleged herein.

150. Ryan Ashe commenced a criminal proceeding against Mr. Lanning when he charged him with Aggravated Unlicensed Operation of a Motor Vehicle in the Third Degree on May 1, 2013 and assisted in the continuance of the criminal prosecution thereafter.

151. Ashe knew that Mr. Lanning was not guilty of the crime charged. In fact, Ashe knew that he had no legal basis for pulling Mr. Lanning over and detaining him that day.

152. Ashe lacked probable cause for charging Mr. Lanning with the above crime.

153. Ashe charged Mr. Lanning with the above crime in furtherance of his personal objective of unlawfully harassing, surveilling, targeting and falsely prosecuting Mr. Lanning based on Ashe's romantic relationship with Jamie Lanning.

154. Ashe's actions against Mr. Lanning were undertaken with actual malice.

155. The proceeding for the above charge was dismissed.

156. The above actions by Ashe constitute malicious prosecution.

157. Ashe was acting under the color of state law in that he utilized the authority vested in him by the Glens Falls Police Department, as demonstrated through his uniform, weapon, and squad car issued by the Glens Falls Police Department, to carry out the acts which constituted malicious prosecution. Further, Ashe was on duty as officer at the time of the incident.

158. The malicious prosecution against the Mr. Lanning was conducted pursuant to a custom practiced by members of the Glens Falls Police Department.

159. As a result of the malicious prosecution against the plaintiff, the plaintiff has been damaged by the defendants in an amount to be determined at trial.

18

## COUNT FOUR
### Violation of Constitutional and Civil Rights Pursuant to 42 U.S.C. §§ 1983 and 1988
### Violation of Fourteenth Amendment Equal Protection Rights
### (Against All Defendants)

160.    The foregoing allegations are incorporated as if re-alleged herein.

161.    The defendants herein violated Mr. Lanning's constitutional rights by intentionally commencing and continuing criminal proceedings against him based on charges known to be falsely made.

162.    The defendants intentionally treated Mr. Lanning differently from others in a similar situation, that situation being the Warren County Sheriff's Department and the Glens Falls Police Department responding to reports of potential criminal activity.

163.    The defendants failed to conduct any investigation into the veracity of the reports based on their personal relationships with and support of the complainants.

164.    The defendants intentionally treated Mr. Lanning differently from others in a similar situation based on his known hostile divorce and custody dispute with Jamie Lanning, Mr. Lanning's perceived interference with police policy, and Jamie Lanning's romantic relationship with Ryan Ashe.  This is evidenced by one officer's comments, "We're all aware of your letters to the chief. Maybe this will slow you down."

165.    There existed no rational basis for this intentional treatment.

166.    Through the above actions, the defendants violated Mr. Lanning's legal rights protecting him from malicious prosecution based on the above-referenced factors and in so doing further violated the Mr. Lanning's right to equal protection under the law.

167.    The defendants were acting under the color of state law in that they utilized the authority vested in them by the Warren County Sheriff's Department and the Glens Falls

Police Department, as demonstrated through their uniforms, weapons and squad cars issued by each Department, to carry out the acts which constituted a violation of Mr. Lanning's right to equal protection under the law.  Further, some of the defendants were on duty as police officers at the times of the incidents.

168.    This different treatment of Mr. Lanning based on the above-referenced factors is a custom practiced pervasively by members of the Warren County Sheriff's Department and the Glens Falls Police Department.

169.    As a result of the violation of the plaintiff's right to equal protection under the law, the plaintiff has been damaged by the defendants in an amount of to be determined at trial.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, David Lanning, pursuant to 42 U.S.C. §S 1983 and 1988, and the United States Constitution, and the Court's own equitable powers, requests that the Court:

A. Enter judgment against each Defendant and in favor of Plaintiff for each violation alleged in this complaint;

B. Award Plaintiff monetary damages for each violation alleged in this complaint in an amount to be determined at trial;

C. Award Plaintiff punitive damages against Ryan Ashe for each violation alleged against him;

D. Award Plaintiff the costs of bringing this action, including attorney's fees pursuant to 42 U.S.C § 1983, as well as such other and additional relief as the Court may determine to be just and proper.

Dated: January 29, 2016

Margaret C. Vijayan Esq.
Law Office of James Edward Gross
Attorneys for the Plaintiff
90 State Street, Suite 700
Albany, New York 12207
(518) 591-4643
Bar Roll No.: 518995

21

## VERIFICATION

STATE OF NEW YORK
CITY OF _Saratoga Springs_
COUNTY OF _Washington._

David Lanning, Jr., being duly sworn, states that he is the plaintiff in this action and that the foregoing complaint is true to his own knowledge, except as to matters therein stated on information and belief and as to those matters he believes it to be true.

_____
David Lanning, Jr.

Sworn to before me _2nd day of Feb._, 2016

_____
Notary Public

SANDRA J FRIDAY
Notary Public, State of New York
No. 01FR6293747
Qualified in Washington County
Commission Expires December 16, 2017

22