**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DAVID LANNING, JR.,**

                                **Plaintiff,**

    **vs.**                                          **1:16-CV-00132**
                                                  **(MAD/DJS)**

**THE CITY OF GLENS FALLS, THE GLENS
FALLS POLICE DEPARTMENT, THE COUNTY
OF WARREN, THE WARREN COUNTY
SHERIFF'S DEPARTMENT, THE WARREN
COUNTY DISTRICT ATTORNEY'S OFFICE,
RYAN ASHE,** *in his official and individual
capacities***, and KEVIN CONINE, JR.,** *in his
official and individual capacities***,**

                              **Defendants.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**LAW OFFICE OF JAMES E. GROSS**    **JAMES E. GROSS, ESQ.**
90 State Street, Suite 700               **MARGARET C. VIJAYAN, ESQ.**
Albany, New York 12207
Attorneys for Plaintiff

**CARTER, CONBOY, CASE, BLACKMORE,**    **JAMES A. RESILA, ESQ.**
**MALONEY & LAIRD, P.C.**             **WILLIAM C. FIRTH, ESQ.**
20 Corporate Woods Boulevard
Albany, New York 12211
Attorneys for Defendants the City of Glens Falls,
the Glens Falls Police Department, and
Ryan Ashe

**LEMIRE, JOHNSON & HIGGINS, LLC**    **BRADLEY J. STEVENS, ESQ.**
P.O. Box 2485                         **GREGG T. JOHNSON, ESQ.**
2534 Route 9
Malta, New York 12020
Attorneys for Defendants the County of Warren,
the Warren County Sheriff's Department,
the Warren County District Attorney's Office,
and Kevin Conine, Jr.

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

On February 4, 2016, Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 against the City of Glens Falls, the Glens Falls Police Department, and Ryan Ashe (collectively, the "City Defendants"), and the County of Warren, the Warren County Sheriff's Department, the Warren County District Attorney's Office, and Kevin Conine, Jr. (collectively, the "County Defendants"), alleging malicious prosecution in violation of the Fourth Amendment and denial of the right to equal protection in violation of the Fourteenth Amendment.

Currently before the Court are Defendants' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. *See* Dkt. No. 43-7; Dkt. No. 50-3. On September 1, 2016, Plaintiff filed a memorandum of law in opposition to the County Defendants' motion. *See* Dkt. No. 47. On September 9, 2016, the County Defendants filed a reply memorandum of law in further support of their motion. *See* Dkt. No. 49. On October 17, 2016, Plaintiff filed a memorandum of law in opposition to the City Defendants' motion. *See* Dkt. No. 54. On November 1, 2016, the City Defendants filed a reply memorandum of law in further support of their motion. *See* Dkt. No. 57-2.

## II. BACKGROUND

In 2012, Plaintiff was in the midst of a divorce and custody battle with his estranged wife, Jamie Lanning, for custody of his daughter. *See* Dkt. No. 1 at ¶ 13. In February of 2012, Ms. Lanning began dating Ryan Ashe, a police officer with the Glens Falls Police Department. *See id.* at ¶ 16. At that time, Defendant Ashe's former partner Kevin Conine, Jr., worked for the Warren County Sheriff's Department. *See id.* at ¶ 18.

Plaintiff alleges that Ms. Lanning misused Defendant Conine's friendship with Defendant Ashe to harm Plaintiff. *See id.* at ¶ 19. Specifically, Plaintiff contends that early in the morning of May 24, 2012 Defendant Ashe brought Ms. Lanning to the Warren County Sheriff's Department where she falsely reported to Defendant Conine that Plaintiff had threatened over the phone to kill her. *See id.* at ¶¶ 20-23. Ms. Lanning's report also noted that Plaintiff was at that time subject to an order of protection. *See* Dkt. No. 43-3. At approximately 3 a.m. that day, Defendant Conine arrested Plaintiff at Plaintiff's home based upon Ms. Lanning's report. *See* Dkt. No. 1 at ¶ 24. Plaintiff was arraigned later that morning in Queensbury Town Court. *See id.* at ¶ 44. Defendant Conine charged Plaintiff with Criminal Contempt in the First Degree and Aggravated Harassment in the Second Degree for violation of the pre-existing order of protection. *See id.* at ¶¶ 45, 122. As a result of the arrest and charges, a "no contact" order of protection was granted against Plaintiff in favor of Ms. Lanning. *See id.* at ¶ 49.

On September 18, 2012, Plaintiff went to his daughter's grandmother's home for a pre-arranged third party custodial pick up. *See id.* at ¶ 64. Plaintiff alleges that Ms. Lanning and Defendant Ashe, who was off duty at the time, were present at the grandmother's home during the pick up in violation of the custody arrangement. *See id.* at ¶¶ 64-67. Plaintiff alleges that after he departed for dinner with his daughter, Ms. Lanning and Defendant Ashe gave false statements to the Glens Falls Police Department claiming that Plaintiff had stared at them in a threatening manner. *See id.* at ¶ 75. Upon his return, Plaintiff noted that Ms. Lanning and Defendant Ashe were sitting in Ashe's personal vehicle across the street from the drop off point. *See id.* at ¶ 70. Five Glens Falls police officers then arrested Plaintiff for allegedly violating the "no contact" order of protection. *See id.* at ¶¶ 72-74. That same night, Plaintiff was arraigned and charged with Criminal Contempt in the First Degree. *See id.* at ¶¶ 83-84.

The May 24, 2012 and September 18, 2012 charges were merged, and on September 21, 2012, the Warren County District Attorney's Office secured an indictment against Plaintiff on three counts of Criminal Contempt in the First Degree and one count of Aggravated Harassment in the Second Degree based upon Ms. Lanning's testimony. *See id.* at ¶¶ 88-89.

On March 6, 2013, the Warren County District Attorney's Office transferred the charges back to Queensbury Town Court and the Glens Falls City Court to be prosecuted separately as misdemeanors. *See id.* at ¶ 98. On April 9, 2013, Plaintiff was arraigned in Glens Falls City Court on two counts of Criminal Contempt in the Second Degree related to the September 18, 2012 events. *See id.* at ¶ 100. Those charges were dismissed on November 7, 2014 in the interest of justice pursuant to section 170.40 of the New York Criminal Procedure Law. *See id.* at ¶ 102; *see also* Dkt. No. 57-1 at 3-4. On May 24, 2013, Plaintiff was arraigned in Queensbury Town Court on one count of Criminal Contempt in the Second Degree and one count of Aggravated Harassment in the Second Degree related to the May 24, 2012 events. *See* Dkt. No. 1 at ¶ 103. Those charges were dismissed on May 7, 2014 following a jury trial. *See id.* at ¶¶ 104, 129.

On May 1, 2013, Defendant Ashe issued traffic tickets against Plaintiff and charged Plaintiff with Aggravated Unlicensed Operation of a Motor Vehicle in the Third Degree, a misdemeanor. *See id.* at ¶¶ 106-07. The charge gave rise to a proceeding, which was dismissed. *See id.* at ¶ 155.

### III. DISCUSSION

**A.      Standard of Review**

Rule 12(c) of the Federal Rules of Civil Procedure provides that "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). When a party makes a Rule 12(c) motion, the court applies the same

standard as when a party files a Rule 12(b)(6) motion. *See Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (citation omitted).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement

to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

**B.**     **Claims Against the Warren County District Attorney's Office, the Warren County Sheriff's Department, and the Glens Falls Police Department**

As Plaintiff concedes, the Warren County District Attorney's Office, the Warren County Sheriff's Department, and the Glen Falls Police Department are not suable entities. *See Murray v. Williams*, No. 12–CV–3240, 2012 WL 2952409, *2 (N.D.N.Y. July 19, 2012) (holding that "plaintiff may not sue the district attorney's office as a separate legal entity") (collecting cases); *Caidor v. M&T Bank*, No. 05–CV–297, 2006 WL 839547, *2 (N.D.N.Y. Mar. 27, 2006) ("'A police department cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity'") (alteration omitted) (quoting *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999)). The Court therefore dismisses all claims against these Defendants.

**C.**     **Official Capacity Claims**

A claim against a municipal officer in his official capacity is essentially a claim against the municipality. *See Odom v. Matteo*, 772 F. Supp. 2d 377, 392 (D. Conn. 2011) (citing *Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001)); *Wallikas v. Harder*, 67 F. Supp. 2d 82, 83-84 (N.D.N.Y. 1999). Therefore, when a section 1983 claim is brought against a municipal entity and an officer in his official capacity, "the official capacity claim should be dismissed as duplicative or redundant." *Odom*, 772 F. Supp. 2d at 392; *see also Wallikas*, 67 F. Supp. 2d at 84. In the present case, Plaintiff has alleged section 1983 claims against both the County of Warren and Defendant Conine for (1) malicious prosecution (count one) and (2) violation of his right to

equal protection (count four). Plaintiff has also alleged section 1983 claims against both the City of Glens Falls and Defendant Ashe for (1) malicious prosecution (count one), (2) malicious prosecution (count two), (3) malicious prosecution (count three), and (4) violation of his right to equal protection (count four). To the extent that Plaintiff brings any of these section 1983 claims against Defendants Conine or Ashe in their official capacities, the Court finds they are duplicative and, therefore, dismissed.

## D.    Malicious Prosecution (Individual Capacity)

"The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person—*i.e.*, the right to be free of unreasonable or unwanted restraints on personal liberty." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995). The elements of malicious prosecution under section 1983 effectively mirror the elements of the same claim under New York law. *See Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992). Accordingly, to state a cause of action for malicious prosecution in New York, the plaintiff must prove (1) the initiation or continuation of a criminal proceeding against the plaintiff; (2) termination of the proceeding in the plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions. *See Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003). To sustain a malicious prosecution claim under section 1983, "the state law elements must be met, and there must also be a showing of a 'sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights.'" *Rutigliano v. City of New York*, 326 Fed. Appx. 5, 8-9 (2d Cir. 2009) (quotation omitted).

### *1. Prosecution for charges resulting from Plaintiff's May 24, 2012 arrest*

#### *a. Kevin Conine, Jr.*

"Probable cause is a complete defense to a malicious prosecution claim." *Kanderskaya v. City of New York*, 11 F. Supp. 3d 431, 436 n.1 (S.D.N.Y. 2014), *aff'd*, 590 Fed. Appx. 112 (2d Cir. 2015). "Under New York law, a grand jury indictment 'creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith."'" *Cornell v. Kapral*, 483 Fed. Appx. 590, 592 (2d Cir. 2012) (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)). Moreover, "[i]t is well-established that an officer normally has probable cause to arrest 'if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth.'" *Kanderskaya*, 11 F. Supp. 3d at 436 (quoting *Miloslavsky v. AES Eng'g Soc., Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992), *aff'd*, 993 F.2d 1534 (2d Cir. 1993)). In the context of a malicious prosecution claim, "'even when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause.'" *Kent v. Thomas*, 464 Fed. Appx. 23, 25 (2d Cir. 2012) (alteration omitted) (quotation omitted). However, "'[i]n order for probable cause to dissipate, the groundless nature of the charge must be made apparent by the discovery of some intervening fact.'" *Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003) (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996)). "[T]he question is whether either the evidence gathered after arrest undermined a finding of probable cause, or whether the [ ] [d]efendants' inquiry into the alleged [crime] so far departed from what a reasonable person would have undertaken as to itself constitute evidence of lack of probable cause." *Rae v. County of Suffolk*, 693 F. Supp. 2d 217, 227 (E.D.N.Y. 2010). "[D]efendants are not obliged to exonerate [a] plaintiff or uncover exculpatory evidence, but the 'failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause.'" *Lawrence v. City Cadillac*, No.

10–CV–3324, 2010 WL 5174209, *6 (S.D.N.Y. Dec. 9, 2010) (quoting *Lowth*, 82 F.3d at 571).

Moreover, where probable cause does not exist, an officer enjoys qualified immunity from suit if there is "arguable probable cause" to charge, that is, if after "accounting for any new information learned subsequent to an arrest, 'it was not manifestly unreasonable for the defendant officer to charge the plaintiff' with the crime in question." *Jean v. Montina*, 412 Fed. Appx. 352, 354 (2d Cir. 2011) (alterations omitted) (quoting *Lowth*, 82 F.3d at 572).

In the present case, Plaintiff does not allege that Defendant Conine learned new facts between Plaintiff's arrest on May 24, 2012 and his arraignment later that same morning. Therefore, the Court's probable cause analysis focuses on probable cause at the time of Plaintiff's arrest. *See Kanderskaya*, 11 F. Supp. 3d at 436 n.1 ("The difference between wrongful arrest and malicious prosecution is that a wrongful arrest claim is based on whether probable cause existed at the time the plaintiff was arrested, whereas malicious prosecution is based on whether probable cause existed at the time the prosecution of the plaintiff began. Since Kanderskaya does not allege that there was any difference in the facts known to the police officers between arrest and arraignment, I analyze only the existence of probable cause at the time of her arrests").

As a preliminary matter, the grand jury indictment creates a presumption of probable cause because Plaintiff was indicted on each of the charges related to his May 24, 2012 arrest. *See* Dkt. No. 1 at ¶ 88. Moreover, the complaint's allegations further support a finding of probable cause. Defendant Conine knew prior to arresting Plaintiff that Plaintiff was subject to an order of protection in favor of Ms. Lanning. *See* Dkt. No. 1 at ¶ 24; Dkt. No. 43-3. "'In cases involving arrests for violating a protective order, courts in this circuit have found that the arresting officer's awareness of the protective order is itself a significant factor in establishing probable cause.'" *Kanderskaya*, 11 F. Supp. 3d at 438 (quoting *Carthew v. County of Suffolk*, 709

F. Supp. 2d 188, 197 (E.D.N.Y. 2010) (collecting cases)).  The fact that Defendant Conine knew Ms. Lanning and Plaintiff were feuding in connection with a bitter divorce, *see* Dkt. No. 1 at ¶ 127, also supports a finding of probable cause.  *See Kanderskaya*, 11 F. Supp. 3d at 437 (finding "the very fact that the parties were in the process of divorcing also lent credibility to Salem's story that his wife had threatened him *because* of marital discord" and "the fact that Salem and Kanderskaya were getting divorced did not mean that the police officers could not rely on Salem's statements without conducting an investigation"); *see also Little v. Massari*, 526 F. Supp. 2d 371, 377 (E.D.N.Y. 2007) ("As to plaintiff's assertion that [the complainant's] credibility was always to be doubted because of the custody battle, that works both ways.  That is, even if [the arresting officer] had embarked a weighing of the parties' credibility, plaintiff was also a litigant in a custody battle, and one who had Orders of Protection entered against him").

To rebut the presumption of probable cause, Plaintiff alleges the following: (1) Defendant Conine executed Plaintiff's arrest in furtherance of his own personal objective of supporting Defendant Ashe and Ms. Lanning, *see* Dkt. No. 1 at ¶ 127; (2) Defendant Conine should have "made further inquiry into the truth of Jamie Lanning's claims following the arrest" and had he conducted such an inquiry, "he would have discovered that there were no phone calls made to her from [ ] [P]laintiff's phone as she claimed, bringing her story into serious doubt, and further undermining probable cause,"[1] *see* Dkt. No. 47 at 17; and (3) Defendant Conine should have known that Ms. Lanning's statement was false based on his personal relationship with her and Defendant Ashe, *see* Dkt. No. 1 at ¶ 123.

---

[1] The significance of this revelation is unclear.  In her sworn statement, Ms. Lanning did not claim that Plaintiff placed a call to her; rather, Ms. Lanning attested that her daughter placed a call to Plaintiff.  *See* Dkt. No. 43-3.

First, Defendant Conine's alleged personal objective is irrelevant to a probable cause analysis because "probable cause is an objective matter that does not depend on the subjective biases of the arresting officer." *Simmons v. N.Y. City Police Dep't*, 97 Fed. Appx. 341, 343 (2d Cir. 2004) (citing *Whren v. United States*, 517 U.S. 806, 812-13 (1996)); *see also Aretakis v. Durivage*, No. 07–CV–1273, 2009 WL 249781, *10 (N.D.N.Y. Feb. 3, 2009) ("Even if there is a question of [a defendant's] motivation, motivation is not a consideration in a court's objective assessment of probable cause").

Second, Defendant Conine's failure to locate additional exculpatory evidence that was not available to him at the time he issued his sworn statement[2] does not defeat the presumption of probable cause. *See Candelario v. City of New York*, No. 12–CV–1206, 2013 WL 1339102, *7 (S.D.N.Y. Apr. 3, 2013), *aff'd*, 539 Fed. Appx. 17 (2d Cir. 2013) ("A claim that police simply failed to investigate or 'could have done more or could have disclosed more' is inadequate [to rebut the presumption of probable cause] because 'plaintiff must demonstrate that the defendants deviated egregiously from accepted practices of investigation or otherwise engaged in conduct that shocks the conscience'") (quotation omitted); *see also De Santis v. City of New York*, No. 10–CV–3508, 2011 WL 4005331, *8 (S.D.N.Y. Aug. 29, 2011) ("The only additional facts De Santis has identified are email messages and Jimenez's telephone records. . . . Although this information could have later been used to cast doubt on Jimenez's credibility, it was not available to Detective Gurniak at the time he completed his sworn statement and thus did not vitiate probable cause") (footnote omitted). To the extent Plaintiff alleges that Defendant Conine should have credited his claim that he had not spoken with his wife in over a year, *see* Dkt. No. 1 at ¶ 34,

---

[2] *Weiner v. McKeefery*, 90 F. Supp. 3d 17 (E.D.N.Y. 2015), is thus readily distinguishable. That case involved an officer's apparent refusal to review an exculpatory recording that the plaintiff had provided to police at the time of his arrest. *See id.* at 34-35.

"an arrestee's protestations of innocence will not defeat probable cause." *Kanderskaya*, 11 F.

Supp. 3d at 437; *see also id.* ("The police were not required to credit Kanderskaya's assertions

that she had moved out of the house and had not made any threatening phone calls").

Third, Ms. Lanning's relationship with Defendant Conine's former partner is insufficient to

rebut the presumption of probable cause. *See Rae*, 693 F. Supp. 2d at 225 (rejecting the argument

"that because [the officers who took the victim's statement] and [the victim] knew one another as

a result of being colleagues at the [Suffolk County Police Department], the Court should infer that

the investigation . . . failed to comport with what a reasonable person would have undertaken").

Even assuming that Ms. Lanning had made false claims against Plaintiff prior to February 2012,

*see* Dkt. No. 1 at ¶¶ 14-16, Ms. Lanning's May 24, 2012 statement was sufficiently credible to be

believed for purposes of establishing probable cause because of the order of protection, the nature

of the alleged crime, and the state of Ms. Lanning's divorce. *See Kanderskaya*, 11. F. Supp. 3d at

435, 438 (holding that a complainant's statements to the police concerning alleged death threats

made by his wife "were sufficiently credible to be believed" for purposes of establishing probable

cause to arrest and prosecute his spouse in light of their ongoing divorce and an order of

protection, even assuming that the complainant had previously made several false claims against

his spouse); *see also id.* at 438 (noting the "difficult problems for the police" posed by "situations

of domestic violence and conflicting accounts"); *Little*, 526 F. Supp. 2d at 377 ("Police officers in

this situation are in a delicate position that is reflected in the standard for probable cause. If an

officer accepts the view of the complaining witness, he may find himself a defendant in an action

like this. But it can be worse. If the officer determines to reject the complainant's view and the

defendant who is the subject of the Order of Protection commits an act of violence against that

complainant—and there are reported instances in which the failure to enforce led to horrific

consequences—the officer may find himself sued for not taking aggressive enough action in enforcing the Order") (citations omitted).

Moreover, Plaintiff has failed to plead factual allegations sufficient to state a plausible claim that Defendant Conine had reason to doubt Ms. Lanning's credibility based on her prior false accusations. Plaintiff does not allege that Defendant Ashe knew of Ms. Lanning's prior accusations. Rather, the complaint states that Ms. Lanning made false claims to the police *before* she began dating Defendant Ashe in February 2012, at which time Defendant Conine and Ashe had already begun to work for different departments. *See* Dkt. No. 1 at ¶¶ 13-15, 16-18. Thus, since the complaint does not even allege that Defendant Ashe knew of Ms. Lanning's prior false statements, Plaintiff's contention that Defendant Conine must have known of them because he is friends with Ashe is "mere conjecture." *Bond v. City of New York*, No. 14–CV–2431, 2015 WL 5719706, *7 (E.D.N.Y. Sept. 28, 2015) ("Where, as here, a plaintiff's only evidence to rebut the presumption of the indictment is his version of events, courts will find such evidence to be nothing more than 'mere conjecture and surmise that [the plaintiff's] indictment was procured as a result of conduct undertaken by the defendants in bad faith,' which is insufficient to rebut the presumption of probable cause") (quotation omitted).

For the foregoing reasons, the Court finds that Plaintiff has failed to carry his burden of rebutting the presumption of probable cause. Furthermore, the Court finds that officers of reasonable competence could disagree as to the existence of probable cause, based on, *inter alia*, Ms. Lanning's sworn statement and the pre-existing order of protection. Therefore, Defendant Conine is at least entitled to qualified immunity. *See Curanaj v. Cordone*, No. 10–CV–5689, 2012 WL 4221042, *10, *11 (S.D.N.Y. Sept. 19, 2012) ("Notwithstanding the history of bad blood between the Parties, the Officers could not be expected to turn a blind eye to a plausible

allegation of the threat of physical violence.  Therefore, [the plaintiff's] version of the facts as alleged in the Complaint establishes at the very least that officers of reasonable competence could disagree on whether the probable cause test was met") (citations and quotation omitted).

### b. Ryan Ashe

The first element of a malicious prosecution claim requires a defendant to have initiated a prosecution.  Under New York law, "'[i]n order for a civilian complainant to be considered to have initiated a criminal proceeding, it must be shown that the complainant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.'"  *Fiedler v. Incandela*, ___ F. Supp. 3d ___, 2016 WL 7406442, *11 (E.D.N.Y. Dec. 6, 2016) (quotation omitted).  "Therefore, 'a defendant may be said to commence or continue a prosecution if that defendant knowingly provides false information or fabricated evidence that is likely to influence the prosecutors or the grand jury.'"  *Id.* (quotation omitted).  On the other hand, "[i]n malicious prosecution cases against police officers, plaintiffs have met this first element by showing that officers brought formal charges and had the person arraigned, or filled out complaining and corroborating affidavits, or swore to and signed a felony complaint."  *Llerando-Phipps v. City of New York*, 390 F. Supp. 2d 372, 382-83 (S.D.N.Y. 2005) (citations omitted).

In the present matter, the Court need not resolve whether Defendant Ashe was acting as a civilian or a police officer in connection with Plaintiff's May 24, 2012 arraignment because it finds that Plaintiff has failed to allege Defendant Ashe's "personal involvement" in the alleged malicious prosecution.  In "all section 1983 claims, 'personal involvement of defendants in [the] alleged constitutional deprivations is a prerequisite to an award of damages.'"  *Barber v. Ruzzo*, No. 10–CV–1198, 2011 WL 4965343, *2 (N.D.N.Y. Oct. 19, 2011) (quoting *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999)).  The complaint only identifies a single specific action

Defendant Ashe took with respect to Plaintiff's May 24, 2012 arrest and related prosecution: Ashe drove Ms. Lanning to the police station shortly after midnight on May 24, 2012 to make her report. *See* Dkt. No. 1 at ¶¶ 22-23. Aside from that claim, the complaint contains only conclusory allegations that Defendant Ashe "prosecuted" Plaintiff throughout 2012 and provided "assistance" to Defendant Conine. *See id.* at ¶¶ 105, 122. Plaintiff has not alleged that Defendant Ashe participated in the May 24, 2012 arrest, provided a sworn statement, encouraged Ms. Lanning to provide a false statement, or submitted evidence before the grand jury. Rather, the crux of count one is that Defendant Conine initiated the prosecution by charging Plaintiff with Criminal Contempt in the First Degree and Aggravated Harassment in the Second Degree. *See id.* at ¶ 122.

The Court therefore finds that Plaintiff has failed to plausibly allege that Defendant Ashe personally participated in Plaintiff's prosecution. *See Leibovitz v. Barry*, No. 15–CV–1722, 2016 WL 5107064, *11 (E.D.N.Y. Sept. 20, 2016) ("Officer Bennett initiated plaintiff's prosecution by filing an accusatory instrument (i.e., her sworn statement) in support of the September 24, 2014 superseding information. However, the Complaint does not allege the specific, personal involvement of Major Lowe or Deputy Clerk Barry in plaintiff's prosecution. Instead, plaintiff makes the conclusory assertion th[at] Lowe and Barry 'conspired' with the Assistant District Attorney and others to 'gain [sic] complaining witness Defendant Bennett into falsely accusing the Plaintiff.' This allegation – which does not allege the particular actions Lowe and Barry took to conspire or maliciously prosecute plaintiff – is insufficient to state a plausible malicious prosecution cause of action") (citations omitted); *see also Hanly v. Powell Goldstein, L.L.P.*, 290 Fed. Appx. 435, 440 (2d Cir. 2008) (finding the allegations that a defendant provided "substantial

assistance" and "additional assistance" to the person who filed a criminal complaint "were too conclusory to pass muster" for purposes of a malicious prosecution claim).

### 2. Prosecution for charges resulting from the September 18, 2012 arrest

A dismissal "in the interest of justice" under New York Criminal Procedure Law § 170.40 may not provide the favorable termination required as the basis for a claim of malicious prosecution. *See Lynch v. Suffolk Cty. Police Dep't, Inc.*, 348 Fed. Appx. 672, 674 (2d Cir. 2009). On November 7, 2014, the Glens Falls City Court *sua sponte* dismissed the charges related to Plaintiff's September 18, 2012 arrest in the interest of justice pursuant to New York Criminal Procedure Law § 170.40. *See* Dkt. No. 1 at ¶ 102; *see also* Dkt. No. 57-1 at 3-4. The City Court explained that conviction or continued prosecution of Plaintiff "would constitute and result in injustice" in part because Plaintiff and Ms. Lanning "had continued to litigate the issues of their marriage through Family Court and Supreme Court" and a decision was then "imminent from a Supreme Court as to all the marital issues after a matrimonial trial." Dkt. No. 57-1 at 3, 5, 6. The City Court also considered that "no actual harm was caused by the offenses" and that Plaintiff had "not been charged with any new crimes and ha[d] not been charged with violating the order of protection" in the interim between his September 2012 arrest and the date of the court's decision. *Id.* at 5-6. That court further noted that "[a]s stated by the Court of Appeals, a dismissal in the furtherance of justice is neither an acquittal of the charges nor any determination of the merits. Rather it leaves a question of guilt or innocence unanswered." *Id.* at 6-7. The City Court also denied and dismissed a cross motion by Plaintiff to dismiss the charges on alternative grounds. *See id.* at 7. Accordingly, the Court finds that the prosecution related to Plaintiff's September 18, 2012 arrest was not favorably terminated. Therefore, count two of the complaint is dismissed.

### 3. Prosecution based upon the May 1, 2013 traffic stop

"[T]he issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure." *Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010). With respect to traffic tickets in particular, numerous courts have held that "'issuance of a traffic ticket or court summons alone does not constitute a seizure under the Fourth Amendment for the purposes of establishing a . . . malicious prosecution claim.'" *Ramdath v. Favata*, No. 11–CV–395, 2014 WL 12586843, *7 (N.D.N.Y. July 23, 2014) (quotation omitted); *see also LoSardo v. Ribaudo*, No. 14–CV–6710, 2015 WL 502077, *5 (E.D.N.Y. Feb. 5, 2015) ("Courts, however, have repeatedly held that the issuance of a traffic ticket or court summons alone does not constitute a seizure under the Fourth Amendment for the purposes of establishing a false arrest or malicious prosecution claim") (collecting cases).

In the present matter, Plaintiff alleges that Defendant Ashe issued three traffic tickets and charged Plaintiff with Aggravated Unlicensed Operation of a Motor Vehicle in the Third Degree, a misdemeanor. *See* Dkt. No. 1 at ¶¶ 106-07. All three tickets were dismissed just one month later on June 13, 2013. *See id.* at ¶ 108. Although Plaintiff contends the charge gave rise to a proceeding, *see id.* at ¶ 155, he does not specify whether he was ultimately required to attend the proceeding. Furthermore, Plaintiff does not allege that he was arrested, required to post bail, or that his ability to travel was limited. Accordingly, the Court finds that Plaintiff's allegations related to the issuance of the May 1, 2013 traffic tickets do not constitute a Fourth Amendment seizure. Moreover, the Court rejects Plaintiff's attempt to bootstrap allegations concerning discrete prosecutions to bolster his claim for malicious prosecution based on the traffic charge. *See Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991) (noting "the need to separately analyze the charges claimed to have been maliciously prosecuted"). Therefore, count three of the complaint is dismissed.

**E.      Equal Protection Claim**

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  To prevail on an equal protection claim based on a theory of selective enforcement, plaintiffs must show both that "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person."  *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995) (quoting *FSK Drug Corp. v. Perales*, 960 F.2d 6, 10 (2d Cir. 1992)).

In a selective enforcement claim, "plaintiffs 'must identify comparators whom a prudent person would think were roughly equivalent[, but] [p]laintiff[s] need not show an exact correlation between [themselves] and the comparators.'"  *Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 815 F. Supp. 2d 679, 696 (S.D.N.Y. 2011) (quotation omitted).  "Put another way: 'The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. . . .  Exact correlation is neither likely or necessary, but the cases must be fair congeners.'"  *Id.* (quoting *T.S. Haulers, Inc. v. Town of Riverhead*, 190 F. Supp. 2d 455, 463 (E.D.N.Y. 2002)).  At the motion to dismiss stage, "a court must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated.  Thus, '[w]ell-pled facts showing that the plaintiff has been treated differently from others similarly situated remains

an essential component of such a claim [and] [c]onclusory allegations of selective treatment are insufficient to state an equal protection claim.'" *Id.* at 698 (quotation omitted).

In the present case, Plaintiff alleges that he is similarly situated to "others in a similar situation, that situation being the Warren County Sheriff's Department and the Glens Falls Police Department responding to reports of potential criminal activity." *See* Dkt. No. 1 at ¶ 162. Plaintiff clarifies in his briefing that he is similarly situated to "the typical citizen in Warren County," Dkt. No. 47 at 21, by which he means "citizens against whom reports of potential criminal activity were made," *id.* at 22, or "individuals involved in ordinary run of the mill domestic disputes," *id.* at 22-23. Even assuming the class is defined as the most narrow of the above iterations, the Court finds that Plaintiff has failed to plausibly allege that he was similarly situated to anyone who was treated differently because the underlying domestic dispute was not "run of the mill." Rather, Ms. Lanning attested that Plaintiff had threatened her life and violated an order of protection. *See Brisbane v. Milano*, 443 Fed. Appx. 593, 594 (2d Cir. 2011) (finding that the plaintiffs failed to plausibly plead sufficient similarity to two named individuals where the plaintiffs were charged with more serious crimes and one set of arrests occurred in response to a life-threatening situation based on a report later shown to be false); *see also Liang v. City of New York*, No. 10–CV–3089, 2013 WL 5366394, *11 (E.D.N.Y. Sept. 24, 2013) ("[T]he City defendants arrested Liang on all three occasions after specific allegations of criminal behavior—physical abuse, verbal harassment, theft of property, violations of the orders of protection, making threatening statements, and brandishing a weapon—had been leveled against him by the putative victims. By contrast, Liang does not allege that he or anyone else ever made complaints about criminal behavior against Tan at or around the time of his arrests, let alone the

kinds of allegations that would cause her to be 'similarly situated in all material respects.' On this ground alone, his selective enforcement claim is subject to dismissal").

Plaintiff has also failed to plausibly state that similarly situated persons were treated differently by Defendants. *See Burns v. City of Utica*, 2 F. Supp. 3d 283, 293 (N.D.N.Y. 2014), *aff'd*, 590 Fed. Appx. 44 (2d Cir. 2014) (granting motion to dismiss where the plaintiff failed to allege "any facts that even plausibly suggest that [the defendants] had investigated [similar] claims . . . any differently"). More fundamentally, Plaintiff's equal protection claim is improper insofar as Plaintiff alleges Defendants violated his right to equal protection *by maliciously prosecuting* him. *See* Dkt. No. 1 at ¶ 166 ("[T]he defendants violated Mr. Lanning's legal rights protecting him from malicious prosecution based on the above-referenced factors and in doing so further violated the [sic] Mr. Lanning's right to equal protection under the law"). Defendants' alleged malicious prosecution does not give rise to a separate claim for selective enforcement. *See Jennejahn v. Village of Avon*, 575 F. Supp. 2d 473, 482 (W.D.N.Y. 2008) ("Jennejahn has cited no authority, and this Court is aware of none, supporting his unusual contention that the law was selectively enforced against him when he was *unlawfully* subjected to the use of excessive force during his arrest. To accept his argument would broaden every excessive use of force claim into a separate equal protection claim").

## F.     Municipal Liability Claims

"Although municipalities are within the ambit of section 1983, municipal liability does not attach for actions undertaken by city employees under a theory of *respondeat superior*." *Birdsall v. City of Hartford*, 249 F. Supp. 2d 163, 173 (D. Conn. 2003) (citing *Monell v. New York City Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978)). Despite the fact that *respondeat superior* liability does not lie, a municipal entity or employee sued in his or her official capacity

can be held accountable for a constitutional violation that has occurred pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers . . . [or] pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690-91. Municipal liability can be established in a case such as this in several different ways, including through proof of an officially adopted rule or widespread, informal custom demonstrating "a deliberate government policy or failing to train or supervise its officers." *Bruker v. City of New York*, 337 F. Supp. 2d 539, 556 (S.D.N.Y. 2004) (quoting *Anthony v. City of New York*, 339 F.3d 129, 140 (2d Cir. 2003)). A plaintiff may also show that the allegedly unconstitutional action was "taken or caused by an official whose actions represent an official policy," or when municipal officers have acquiesced in or condoned a known policy, custom, or practice. *See Jeffres v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000), *cert. denied sub nom.*, *County of Schenectady v. Jeffes*, 531 U.S. 813 (2000); *see also Wenger v. Canastota Cent. Sch. Dist.*, No. 95–CV–1081, 2004 WL 726007, *3 (N.D.N.Y. Apr. 5, 2004).

In the present matter, since Plaintiff has failed to plausibly allege any unconstitutional conduct against Defendants Ashe or Conine, Plaintiff's municipal liability claims must also be dismissed. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct"). Therefore, the Court dismisses Plaintiff's claims against the City of Glens Falls and the County of Warren.

## IV. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants' motions for judgment on the pleadings are **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 8, 2017
      Albany, New York

Mae A. D'Agostino
U.S. District Judge